IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENNETH HAMILTON, ) <br> #R-12594, ) <br> ) <br>     Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> BLAKE WOODS, ) <br> ALFONSO DAVID, ) <br> TAMMY PITTAYATHIKHAN, ) <br> K. SEIP, ) <br> JEFFREY DENNISON, ) <br> DEBBIE KNAUER, ) <br> NURSE TERRY, ) <br> KAREN SMOOT, and ) <br> VENERIO SANTOS, ) <br> ) <br>     Defendants. ) | Case No. 18–cv–172–DRH |

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff Kenneth Hamilton, an inmate in East Moline Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights that allegedly occurred at Shawnee Correctional Center ("Shawnee") and Centralia Correctional Center ("Centralia"). In his Complaint, Plaintiff claims the defendants have been deliberately indifferent to his serious medical issues in violation of the Eighth Amendment. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

1

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

As a part of screening, the Court is also allowed to sever unrelated claims against different defendants into separate lawsuits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In *George*, the Seventh Circuit emphasized that the practice of severance is important, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *Id*. This

practice is encouraged. The Seventh Circuit Court of Appeals has recently warned district courts not to allow inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). *See also Wheeler v. Talbot*, 695 F. App'x 151 (7th Cir. 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them). Consistent with *George*, *Owens*, and *Wheeler*, unrelated claims will be severed into new cases, given new case numbers, and assessed separate filing fees.

### The Complaint

In his Complaint (Doc. 1), Plaintiff makes the following allegations: Plaintiff met with Defendant Woods seeking treatment for his foot problems, because his feet began to crack and swell. (Doc. 1, p. 3). On March 21, 2016, Woods prescribed Plaintiff with Miconazole, an anti-fungal cream. *Id.* Shortly thereafter, Plaintiff met with Defendant Terry to report unusual complications from the Miconazole. (Doc. 1, p. 3). Terry scheduled Plaintiff to meet with David. *Id.* When he did, he told David that his feet became more swollen and painful and his toenails thickened, turned black, and began to peel and fall off after he began using the Miconazole. *Id.* David told Plaintiff that the Miconazole did not cause the reported symptoms and encouraged him to continue using it. *Id.* Plaintiff continued using the Miconazole. *Id.* He continued reporting to David that it was not helping with the pain, bleeding, discoloration, and peeling of his nails. *Id.*

David told him to continue using it. *Id.*

Months later, Plaintiff met with Defendant Pittayathikhan, who told him to cease using the Miconazole. *Id.* Instead, Plaintiff was prescribed Lamisil and Clotrimazole. *Id.* The Lamisil was originally prescribed for 12 weeks, but Pittayathikhan "failed to monitor Plaintiff's prescription causing him to self-administer the Lamisil for months." *Id.* Plaintiff later met with David and Pittayathikhan who told him they forgot to discontinue his Lamisil after 12 weeks. (Doc. 1, p. 4). They also discovered that Plaintiff had developed an infection that went untreated for months. *Id.* "As a result of the overuse of Lamisil and the untreated infection, Plaintiff developed limited motion in his legs due to the infection in his foot." *Id.* This resulted in Plaintiff being removed from his job assignment because he could barely move, "excess weight gain resulting in the diagnosis as a diabetic," and a persistent abnormal heartbeat and enlarged heart. *Id.*

On October 25, 2017, Plaintiff was transferred to Centralia. *Id.* He met with Defendant Santos and was diagnosed with foot ulcers. *Id.* Santos discontinued Plaintiff's antibiotics and "did not provide him with any substitution to relieve him of the pain, swelling, and infection." *Id.* Plaintiff told Santos he had a medical order from the Shawnee doctor for special medical shoes, but Santos told him to buy shoes from commissary. *Id.* "Plaintiff was left to walk around in painful shoes purchased from the inmate commissary." (Doc. 1, p. 5).

Plaintiff told Defendants Seip, Dennison, and Knauer about his treatment and how he was "overdosed on Lamisil" which resulted in him developing a heart

condition and contracting a diabetic condition. (Doc. 1, pp. 5-6). "Seip, Dennison, Smoot, and Knauer were made aware of Plaintiff's predicament by way of his grievance and other correspondences." (Doc. 1, p. 6). Seip, Dennison, and Knauer ruled that the defendants had acted with routine and careful medical care, and they, along with Smoot, neglected to investigate or attempt to intervene in Plaintiff's treatment. (Doc. 1, pp. 5-6). "Plaintiff continues to experience extreme levels of pain, discomfort in his feet, and heart problems." (Doc. 1, p. 5).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 2 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** Defendants David, Pittayathikhan, Woods, Seip, Dennison, Terry, Knauer, and Smoot showed deliberate indifference to Plaintiff's serious medical needs involving his foot infection and ulcers, and pain associated therewith, in violation of the Eighth Amendment.
>
> **Count 2 –** After Plaintiff was transferred to Centralia October 25, 2017, Defendant Santos showed deliberate indifference to Plaintiff's serious medical needs involving his foot infection and ulcers, and pain associated therewith, in violation of the Eighth Amendment.

As discussed in more detail below, Count 1 will be allowed to proceed past threshold, and Count 2 will be severed into a new case. Any other intended claim that has not been recognized by the Court is considered dismissed without

prejudice as inadequately pleaded under the *Twombly* pleading standard.

## Severance

Counts 1 and 2 represent two sets of unrelated claims against different defendants: those based in Shawnee in Count 1 and Centralia in Count 2. Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever Count 2 into a separate action, and shall open a new case with a newly-assigned case number for that claim. A separate merits review shall be conducted in the severed case after it is opened and assigned to a judge. Plaintiff shall be assessed a new filing fee for the severed case.

## Count 1

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state a claim, a prisoner must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The Seventh Circuit has held that a medical need is "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a

doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). The Court finds that Plaintiff's foot infection, ulcers, and diabetes and heart problems constitute serious medical needs at this stage.

The Complaint must also satisfy the subjective component of these claims. To do so, the Complaint must suggest that the defendants exhibited deliberate indifference to Plaintiff's serious medical needs. Deliberate indifference is established when prison officials "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834).

Plaintiff claims that David did not change Plaintiff's course of treatment after having repeatedly been informed that Plaintiff had only gotten worse after starting it. Plaintiff also claims that Pittayathikhan switched Plaintiff's prescription, but failed to monitor Plaintiff on his new prescription resulting in dire consequences including an untreated infection, limited motion in his legs, a diabetic condition, and a heart condition. The Court finds that Plaintiff has stated a deliberate indifference claim against both David and Pittayathikhan based on these claims.

Plaintiff's allegations against Terry, Woods, and Smoot are insufficient to establish deliberate indifference, however. Plaintiff claims that he met with Woods, and Woods prescribed him an anti-fungal cream for his feet. He also

7

claims that when the cream caused him complications, he met with Terry who scheduled him an appointment with David, a physician. These allegations do not support a claim that Woods and/or Terry knew of and disregarded an excessive risk to Plaintiff's health, as Plaintiff does not claim that Woods was aware that the cream would not work, or that Terry unreasonably delayed referring him to David.

Plaintiff's claims against Smoot are sparse and largely conclusory. Plaintiff claims that she was aware of his predicament, but he does not explain how or when she became aware, how much information she had regarding his issues, or her level of involvement in his case generally. Without more, Plaintiff has not established deliberate indifference on her part. Woods, Terry, and Smoot will therefore be dismissed without prejudice from this action.

With respect to Dennison, Seip, and Knauer, "[a]s non-medical defendants, they were entitled to reasonably rely on the expertise of the medical professionals." *Thornton v. Godinez*, 2017 WL 6492651, at *2 (7th Cir. December 19, 2017) (citing *Johnson v. Doughty*, 433 F.3d 1001, 1010–11 (7th Cir. 2006)). *See also Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance.") (citing *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)).

From the grievance response attached to the Complaint, it appears that Seip investigated Plaintiff's allegations regarding improper medical care. She was

informed by the Health Care Unit Administrator that Plaintiff's medical providers were meeting with him regularly and providing him with care pursuant to their medical judgment, and that his issues were "noted to be improving and doing well." (Doc. 1-1, p. 7). Seip denied the grievance based on this information, relying on the expertise of medical professionals, and Dennison concurred with this assessment. Plaintiff appealed the decision to the Administrative Review Board, but Knauer denied the appeal for being sent past the deadline for consideration. Plaintiff has failed to implicate Knauer, Seip, or Dennison for deliberate indifference to his medical needs based on these allegations, and because the doctrine of *respondeat superior* is not applicable to § 1983 actions, they will be dismissed without prejudice from this action. *Sanville,* 266 F.3d at 740.

### Disposition

**IT IS HEREBY ORDERED** that **COUNT 2,** which is unrelated to the other claim in this action, is **SEVERED** into a new case against **SANTOS**.

The claims in the newly severed case shall be subject to screening pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In the new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The Complaint (Doc. 1); and
- Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. 2) and Prisoner Trust Fund Account Statements (Doc. 6, 9).

Plaintiff **will be responsible for an additional $350 filing fee** in the newly

9

severed case.[1] No service shall be ordered in the severed case until the § 1915A review is completed.

**IT IS FURTHER ORDERED** that the *only claim remaining in this action is Count 1*.

**IT IS FURTHER ORDERED** that **COUNT 1** will **PROCEED** against **DAVID** and **PITTAYATHIKHAN**.

**IT IS FURTHER ORDERED** that **WOODS**, **SEIP**, **DENNISON**, **KNAUER**, **TERRY**, and **SMOOT** are **DISMISSED** from **this** action without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **SANTOS** is **DISMISSED** from **this** action with prejudice for the reasons stated above.

**IT IS FURTHER ORDERED** that as to **COUNT 1**, the Clerk of Court shall prepare for the **DAVID** and **PITTAYATHIKHAN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Plaintiff. If one of the defendants fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant pay the

---

[1] Pursuant to 28 U.S.C. § 1914, effective May 1, 2013, an additional $50.00 administrative fee is also to be assessed in all civil actions, unless pauper status is granted.

10

full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to

keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Judge Herndon
2018.03.14
16:45:54 -05'00'

_____
**U.S. District Judge**